UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO ROBERT SANCHEZ, | Case No. CV 16-8043-KK |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Plaintiff Mario Robert Sanchez ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his application for Title II Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is AFFIRMED.

///
///
///
///

---

[1] Pursuant to the request of the parties, the Court substitutes Nancy A. Berryhill, the current Acting Commissioner of Social Security, as Defendant in this action. Fed. R. Civ. P. 25(d).

# I.
# **PROCEDURAL HISTORY**

On November 5, 2012, Plaintiff filed an application for DIB, alleging a disability onset date of August 9, 2012.[2] Administrative Record ("AR") at 170-71. Plaintiff's application was denied initially on March 12, 2013. Id. at 98-116. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 117-18. On October 8, 2013, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ. Id. at 64-97. A vocational expert ("VE") also testified at the hearing. Id. at 94-96. On February 25, 2014, Plaintiff appeared with counsel and testified at a supplemental hearing before a newly-assigned ALJ. Id. at 46-63. On September 26, 2014, the ALJ issued a decision denying Plaintiff's application for DIB. Id. at 17-45.

Plaintiff filed a request to the Agency's Appeals Council to review the ALJ's decision. See id. at 342-44. On August 24, 2016, the Appeals Council denied Plaintiff's request for review. Id. at 1-4.

On October 28, 2016, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1, Compl. This matter is before the Court on the Parties' Joint Stipulation ("JS"), filed on July 12, 2017. Dkt. 20, JS.

# II.
# **PLAINTIFF'S BACKGROUND**

Plaintiff was born on March 6, 1962, and his alleged disability onset date is September 6, 2012. AR at 170, 172. He was fifty years old on the alleged disability onset date and fifty-one years old at the time of the two hearings before the ALJ. Id. at 67-68, 170. Plaintiff attended four years of high school but did not receive his diploma or a GED. Id. at 68-69. Plaintiff alleges disability based on bilateral knee pain, right hip pain, back pain, nerve damage in neck and hands, arthritis in his

---

[2] On August 8, 2017, Petitioner amended his application to allege an onset date of September 6, 2012. AR at 172-73.

neck and spine, left ankle pain, high blood pressure, and depression. Id. at 52-59, 61-62, 76-79, 84-94, 98, 189.

## III.
## STANDARD FOR EVALUATING DISABILITY

To qualify for DIB, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[3]
4. Is the claimant capable of performing work he has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

---

[3] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

3

5. Is the claimant able to do any other work? If not, the claimant is found
            disabled. If so, the claimant is found not disabled.

See <u>Tackett</u>, 180 F.3d at 1098-99; see also <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. <u>Bustamante</u>, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. <u>Id.</u> at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## **THE ALJ'S DECISION**

**A.   STEP ONE**

At step one, the ALJ found Plaintiff has not engaged "in substantial gainful activity since September 6, 2012, the alleged onset date." AR at 25.

**B.   STEP TWO**

At step two, the ALJ found Plaintiff "ha[d] the following medically determinable conditions of ill-being: degenerative disc disease and degenerative arthritis of both the lumbar spine and the cervical spine; carpal tunnel syndrome; cubital tunnel syndrome; obesity; deconditioning; partial tear of the medial meniscus of the left knee; partial tear of the medial meniscus of the right knee; and degenerative arthritis of the right hip." <u>Id.</u> (internal citations omitted).

///

///

## C. STEP THREE

At step three, the ALJ found Plaintiff does "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id. at 28.

## D. RFC DETERMINATION

The ALJ found Plaintiff had the following RFC:

> "to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can lift and carry up to twenty (20) pounds occasionally and ten (10) pounds frequently; can push and pull up to twenty (20) pounds occasionally and ten (10) pounds frequently; can stand and walk up to six (6) hours and sit up to six (6) hours, cumulatively in an eight-hour day; can occasionally climb, bend, and kneel, but cannot crouch or crawl; can frequently reach above shoulder level with the left and right upper extremities; can frequently handle; can occasionally finger; and cannot climb ladders."

Id. at 29.

## E. STEP FOUR

At step four, the ALJ found Plaintiff is "unable to perform any past relevant work." Id. at 36.

## F. STEP FIVE

At step five, the ALJ found "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Id. at 37.

///
///
///
///
///

5

V.

**PLAINTIFF'S CLAIMS**

Plaintiff presents two disputed issues: (1) whether the ALJ properly assessed Plaintiff's ability to stand and walk; and (2) whether the ALJ properly considered Plaintiff's subjective complaints.[4]

VI.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."

---

[4] Social Security Regulations regarding the evaluation of opinion evidence and credibility were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 Fed. Appx. 801, 805 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 15-05925, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"); cf. Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010, 58011 (Nov. 19, 2001) ("With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision."). Accordingly, the Court applies the versions of 20 C.F.R. §§ 416.927 and 416.929 that were in effect at the time of the ALJ's September 26, 2014 decision.

6

Reddick, 157 F.3d at 720 (citation omitted); see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a 'specific quantum of supporting evidence'") (citation omitted). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

## VII.
## DISCUSSION

### A. THE ALJ PROPERLY ASSESSED PLAINTIFF'S ABILITY TO STAND AND WALK

#### 1. Relevant Facts

##### i. Dr. Rishi Garg, M.D.

Dr. Rishi Garg is an orthopedic surgeon who treated Plaintiff from August 23, 2012 to March 1, 2013, when Plaintiff became "permanent and stationary." AR at 362-419, 452-73, 506-08, 540-50. Dr. Garg treated Plaintiff for multiple injuries over the course of more than six months. Id. However, by the time of Dr. Garg's March 1, 2013 permanent and stationary report, he was treating Plaintiff only for his bilateral knees and right hip. Id. at 370.

In Dr. Garg's permanent and stationary report, he reported Plaintiff's knees were tender bilaterally with a "positive McMurray." Id. at 368. Plaintiff also exhibited tenderness of the right hip with positive impingement and "positive Stinchfield." Id. Dr. Garg diagnosed Plaintiff with left ankle sprain, bilateral knee medial meniscus tear with patellofemoral degenerative joint disease, right hip mild degenerative joint disease with snapping iliopsoas tendon, bilateral cubital tunnel syndrome, cervical spine arthritis, and lumbar strain with lumbar spine degenerative disc disease. Id. at 369. Dr. Garg detailed the diagnostic testing that supported his diagnoses and clinical findings. Id. at 368-69. Relevant to Plaintiff's claim, Dr. Garg concluded Plaintiff was unable to engage in "prolonged walking or standing." Id. at 370.

The ALJ rejected Dr. Garg's opinions for the following reasons (1) Plaintiff received largely conservative treatment, (2) Dr. Garg's opinions were inconsistent with the State Agency staff opinions and those of the medical expert, (3) Dr. Garg inconsistently defined Plaintiff's functional abilities, (4) Dr. Garg's opinions were not well supported by the overall medical evidence, and (5) other treating and/or examining sources found fewer limitations. Id. at 31-33.

### ii.    Dr. Jonathan Kaplan, M.D.

Dr. Kaplan is an orthopedic surgeon who examined Plaintiff for purposes of his state disability claim on February 22, 2014. Id. at 924-33. Dr. Kaplan reported Plaintiff's gate had a slow cadence and velocity, and was slightly antalgic bilaterally. Id. at 928. Dr. Kaplan further reported Plaintiff took smaller steps "with clear discomfort" and could not squat, heel walk, or toe walk. Id. As to Plaintiff's neck, Dr. Kaplan reported tenderness, mild to moderate muscle spasms, and decreased range of motion. Id. Dr. Kaplan further reported tenderness and mild muscle spasms of Plaintiff's spine, in addition to "significant discomfort" upon rotation. Id. Dr. Kaplan reported Plaintiff experienced pain upon extended rotation of his

right hip. Id. Plaintiff's knees were tender to palpation and McMurray test results were positive bilaterally. Id. Plaintiff also exhibited tenderness in his left ankle. Id.

Dr. Kaplan diagnosed cervical degenerative disc disease with multiple level herniated disc, lumbar degenerative disc disease at multiple levels and herniated discs, bilateral cubital tunnel syndrome and carpal tunnel syndrome, right hip degenerative joint disease, bilateral knee medial meniscus tears and mild osteoarthritis of the patellofemoral joint, and history of left ankle sprain. Id. at 932. Relevant to Plaintiff's claim, Dr. Kaplan concluded Plaintiff could stand and walk for two hours out of an eight-hour workday. Id.

The ALJ rejected Dr. Kaplan's opinions for the following reasons (1) Plaintiff received largely conservative treatment, (2) Dr. Kaplan's opinions were inconsistent with other medical sources, (3) Dr. Kaplan's opinions were inconsistent with the evidence of Plaintiff's level of impairment, and (4) other treating and/or examining sources found fewer limitations. Id. at 31-33.

### 2. Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d

1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her or] his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth [her or] his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

While an ALJ is not required to discuss all the evidence presented, he must explain the rejection of uncontroverted medical evidence, as well as significant probative evidence. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

### 3. Analysis

By claiming the ALJ improperly assessed Plaintiff's ability to stand and walk, Plaintiff argues the ALJ improperly rejected the assessments of treating orthopedist Rishi Garg, M.D. and examining orthopedist Jonathan Kaplan, M.D. as to his ability to stand and walk during the workday. JS at 5-10, 15. However, as discussed below, the ALJ provided sufficiently "specific and legitimate reasons that are supported by substantial evidence in the record" when rejecting Dr. Garg's and

Dr. Kaplan's opinions.[5] Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted).

### i. Conservative Treatment

First, the ALJ's reliance on Plaintiff's conservative treatment as a factor in support of rejecting the opinions of Drs. Garg and Kaplan qualifies as a specific and legitimate reason for rejecting the treating and examining sources. Hanes v. Colvin, 651 Fed. Appx. 703, 705 (9th Cir. 2016)[6] (holding the ALJ gave specific and legitimate reason for rejecting treating source opinion where ALJ reasonably relied on, among other things, Plaintiff's conservative treatment); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding ALJ provided adequate reasons for rejecting treating physician's opinions where, among other things, physician "prescribed a conservative course of treatment").

Moreover, the ALJ's conclusion Plaintiff received only conservative treatment is supported by the record. Throughout the majority of Plaintiff's treatment, Dr. Garg generally only prescribed physical therapy for Plaintiff's knees and hip. AR at 380, 383, 385, 388, 395, 403, 472, 507. While the Court recognizes Dr. Garg recommended arthroscopic surgery with meniscal debridement for Plaintiff's knees and "possible right hip arthroscopy in the future as well," Plaintiff ultimately declined the treatment. Id. at 92, 366, 367, 373, 377, 395, 457, 458, 465, 469, 544. Rather than recommending any other form of treatment or therapy, however, Dr. Garg merely concluded Plaintiff was permanent and stationary at that time. Id. at 385, 458, 546. As for Dr. Kaplan, he only recommended Plaintiff use a

---

[5] Because Dr. Garg's and Dr. Kaplan's opinions were contradicted by the other medical evidence of record, in order to reject these opinions the ALJ was required to present "specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim, 763 F.3d at 1160-61; Garrison, 759 F.3d at 1012.

[6] The Court may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007. U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

cane, as well as knee and back braces. Id. at 933. Significantly, no doctor prescribed injections for Plaintiff's pain. Id. at 78.

### ii. Unsupported by Record

Second, lack of support in the record for a physician's opinions is a sufficient basis for rejecting the opinion. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding the ALJ properly rejected a physician's opinion that was inconsistent with the record). Here, the ALJ properly relied on the fact that the opinions of Drs. Garg and Kaplan were not supported by the record. Specifically, the ALJ concluded Dr. Garg's opinions were (1) inconsistent with the State Agency staff opinions and those of the medical expert, (2) not well supported by the overall medical evidence, and (3) inconsistent with other treating and/or examining sources. Id. at 31-33. Similarly, the ALJ found Dr. Kaplan's opinions (1) were inconsistent with other medical sources and the evidence of Plaintiff's level of impairment, and (2) other treating and/or examining sources found fewer limitations. Id.

Moreover, the ALJ's conclusion that the opinions of Drs. Garg and Kaplan were not supported by the record is consistent with the medical evidence. For example, imaging of Plaintiff's spine showed only mild abnormalities, which appear inconsistent with the limitations set out by Drs. Garg and Kaplan. AR at 484, 503, 511-14, 516, 520, 555, 558, 578-87, 598, 609-11, 635-36, 640, 703-04. As might be expected given the mild impairment, Plaintiff received only conservative treatment for his back. Id. at 485, 505, 511, 518, 520, 528, 534, 556-57, 559, 588, 599-607, 638, 640. On March 25, 2013, Plaintiff's treating spine physician concluded Plaintiff's back pain limited him only to the extent he could not lift more than 20 pounds and was unable to perform frequent bending of his neck and low back. Id. at 490, 560-61, 578.

As for Plaintiff's alleged ankle impairment, an October 2012 MRI of Plaintiff's left ankle was "rather unremarkable." Id. at 653, 654, 669, 670. In

addition, X-rays of his left ankle have been "negative" and "unremarkable." Id. at 654, 669, 670, 683, 684, 695, 696. Significantly, February 28, 2013 and March 28, 2013 medical notes questioned the validity of Plaintiff's complaints of ankle pain. Id. at 652, 654, 670, 695. On March 28, 2013, Plaintiff's treating podiatrist suggested Plaintiff's ankle impairment limited his ability to work only to the extent Plaintiff required "occasional sitting." Id. at 654. As for Plaintiff's alleged hip pain, an MRI showed only mild abnormalities. Id. at 521, 529, 613, 641. Dr. Garg prescribed only anti-inflammatory medication and physical therapy for Plaintiff's hip pain, and merely suggested he might need arthroscopic surgery on his hip at some point in the future. Id. at 363-64, 366, 371.

Finally, although the objective medical evidence shows Plaintiff suffered from knee impairments, the remaining record supports a finding that these impairments were not disabling to the extent Drs. Garg and Kaplan concluded in their assessments. As stated above, Plaintiff declined surgical intervention for his knee injuries. In addition, although many months passed between Dr. Garg's permanent and stationary report and the ALJ hearings, and despite Plaintiff's apparent access to medical care, see id. at 889-922, Plaintiff did not seek out any medical treatment specific to his impairments affecting his ability to stand and walk during those months. While the record shows a brief attempt to be treated for back pain, Plaintiff's physician prescribed only conservative treatment, which included physical therapy and a prescription for Motrin, Prednisone, and Neurontin. Id. at 902, 911, 913, 919, 920. Plaintiff's physician additionally informed Plaintiff he would only extend Plaintiff's "disability" for two weeks based on his complaints of back pain. Id. at 904, 910-13, 918-19. Furthermore, the record does not contain any evidence Plaintiff sought additional treatment for his knee during this time period.

For all the foregoing reasons, the Court finds the ALJ gave sufficient and legitimate reasons for rejecting the stand/walk limitations assessed by Drs. Garg

and Kaplan. Hence, the ALJ did not err in assessing Plaintiff's RFC with respect to his ability to stand and walk.

**B.    THE ALJ PROPERLY REJECTED PLAINTIFF'S SUBJECTIVE COMPLAINTS OF IMPAIRMENT**

    **1.    Relevant Facts**

        **i.    Plaintiff's Testimony Regarding His Impairments**

Plaintiff testified at the October 8, 2013 hearing before the ALJ. He testified he could only walk for ten to fifteen minutes at a time. AR at 81-82. He further explained he usually used a cane to walk, but he did not bring it with him to the hearing. Id. at 82. He stated he could stand for an hour "if [he] force[d] [himself] to," but that after an hour he experienced stiffness and pain. Id. at 82, 92. He estimated he could sit for fifteen to twenty minutes at a time before his back hurt and he could lift only ten to fifteen pounds. Id. at 82-83, 92-93. Plaintiff explained that his hands hurt, but he still used them. Id. at 85. He also testified he could only drive a car for about ten to fifteen minutes before his hands and arms fall asleep. Id. at 92.

Plaintiff stated his hands and back prevented him from working. Id. at 87-89. He described his bad days as consisting of "just laying either on a bed or a recliner," or laying on the floor after taking pain medication. Id. at 93, 94. He estimated he has seven to ten bad days a month. Id. at 93. Plaintiff also described experiencing side effects from his medication, including nausea, dizziness, headaches, and sleepiness. Id. at 91. He testified he could do some housework, such as some dishes, vacuuming, and folding laundry. Id. at 93.

Plaintiff also testified at the February 25, 2014 hearing before the ALJ. Plaintiff testified he had been attending mental health counseling for about a week, but his psychological symptoms started about fourteen months prior. Id. at 52-53. He described being "frustrated, anxi[ous], depressed, very unhappy." Id. at 54. Plaintiff testified that since the prior October 8, 2013 hearing his hands had gotten

worse and they were stiffer and more painful.  Id. at 55, 57-58.  Plaintiff further testified his back was getting worse, as it was stiffer, "more throbbing," and had "sharp pains."  Id. at 58.  Plaintiff explained he was then limited to only five minutes of driving before his hands began to ache and go numb.  Id. at 61.  He continued to complain of an inability to sit for long periods due to back pain.  Id.  He further explained he could not lift things lower than "table high" and could not hold even ten pounds of weight.  Id. at 62.

## ii. The ALJ's Adverse Credibility Finding

The ALJ found Plaintiff's alleged disabling symptoms were not "fully credible."  Id. at 35.  In support of this finding, the ALJ relied upon: (1) Plaintiff's alleged symptoms, which were not supported by the medical evidence; (2) the inconsistencies between Plaintiff's statements and actions; (3) the inconsistencies between Plaintiff's daily activities and his allegations of impairment; and (4) Plaintiff's statements regarding his ability to perform other work and his "weak commitment to engaging in work."  Id. at 35-36.

## 2. Applicable Law

If "the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect."  Robbins v. Social Security Administration, 466 F.3d 880, 883 (2006) (citations omitted).  The ALJ's credibility determination must be supported by "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  Tommasetti, 533 F.3d at 1039 (citation and internal quotation marks omitted).

The ALJ is required to engage in a two-step analysis.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citations and

internal quotation marks omitted). "If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." Id. (citations and internal quotation marks omitted). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) (holding "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination").

"If the ALJ's credibility finding is supported by substantial evidence, [a court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, an ALJ's failure to give specific, clear, and convincing reasons to reject the claimant's testimony regarding the severity of the symptoms is not harmless, because it precludes the Court from conducting a meaningful review of the ALJ's reasoning. Brown-Hunter, 806 F.3d at 489.

### 3. Analysis

As discussed below, the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's subjective complaints of impairment. Molina, 674 F.3d at 1112.

#### i. Not Supported by Medical Evidence

While an ALJ "may not reject a claimant's subjective complaints based *solely* on a lack of objective medical evidence to fully corroborate the alleged severity of pain," this factor still remains relevant. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (emphasis added); Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding an ALJ may properly rely on inconsistency between claimant's subjective complaints and objective medical findings); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (finding an ALJ may properly rely on

16

conflict between claimant's testimony of subjective complaints and objective medical evidence in the record). Here, one of the reasons the ALJ rejected Plaintiff's subjective complaints was because they were not supported by the medical evidence. AR at 35. As detailed above with respect to Claim One, the medical evidence was quite unremarkable. Except for Plaintiff's bilateral knee impairment, for which surgery was recommended but Plaintiff declined and then failed to seek further treatment, no medical source found significant impairments or recommended more than conservative treatment. The rather benign medical record does not support Plaintiff's claim that he cannot engage in any work activity, and thus, weighs in favor of the ALJ's finding that Plaintiff's subjective complaints were not fully credible. Furthermore, as discussed below, while this factor is not the sole reason the ALJ provided for rejecting Plaintiff's subjective complaints, it is a specific, clear, and convincing reason.

### ii. Statements Inconsistent with Disability

The ALJ additionally rejected Plaintiff's subjective complaints because of his statements regarding his ability to perform other work and his "weak commitment to engaging in work." AR at 35. Specifically, the ALJ cited Plaintiff's testimony at the first ALJ hearing that he "probably" could perform a job that was less strenuous than his past job, and Plaintiff's suggestion to his podiatrist that he "had no intentions of returning to work." Id.

The ALJ's assessment of Plaintiff's statements is supported by the record. Despite claiming to be disabled, at the first ALJ hearing Plaintiff testified "[t]here's a chance [he] probably" could perform "a sit down job" or a job requiring "putting up boxes, light boxes." Id. at 88. In addition, Plaintiff's treating podiatrist reported in his March 28, 2013 permanent and stationary report that Plaintiff "indicated he was eligible for retirement in two years and more or less implied that he had no intentions of returning to work." Id. at 670. In the same report, Plaintiff's podiatrist concluded "[t]he degree and validity of [Plaintiff's] subjective

complaints appear to be questionable." Id. Notably, Plaintiff admitted at the first ALJ hearing that he stopped seeking treatment for his alleged impairments after receiving his settlement in his worker's compensation action. Id. at 85. These statements by Plaintiff, which are inconsistent with his claims of total disability and suggest he was motivated by a desire to remain off work, amounted to a specific, clear, and convincing reason for rejecting Plaintiff's allegations of impairment. See Perez v. Astrue, 247 Fed. Appx. 931, 934 (9th Cir. 2007) (finding no error when an ALJ uses "ordinary techniques of credibility evaluation" and rejects plaintiff's credibility where plaintiff's testimony was inconsistent and physician reported she exaggerated her symptoms).

### iii. Daily Activities

Finally, the ALJ rejected Plaintiff's subjective complaints of impairments based, in part, on his ability to perform daily activities. AR at 35. While the ability to perform basic daily activities is not necessarily inconsistent with disability, see, e.g., Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (holding "activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain"), Plaintiff's inconsistent statements and actions regarding his ability to perform certain daily activities was an additional factor supporting the ALJ's rejection of Plaintiff's subjective complaints. See, e.g., Thomas, 278 F.3d at 958-59 (citation omitted) (holding the ALJ may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities). Specifically, in Plaintiff's Exertional Activities Questionnaire, he claimed he did not engage in any housework. AR at 196. On the other hand, Plaintiff testified at the first ALJ hearing that he performed light housework, such as washing dishes, vacuuming, and folding laundry. Id. at 93. These inconsistencies led the ALJ to question both Plaintiff's credibility and whether he had greater capabilities than what was previously alleged. Id. at 35.

Because the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's subjective complaints of impairment, all of which were supported by the record, there was no error.  <u>Thomas</u>, 278 F.3d at 959; <u>Brown-Hunter</u>, 806 F.3d at 489.

## VIII.
## ORDER

For the foregoing reasons, IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner.

Dated: August 16, 2017

/s/ Kenly Kato

HONORABLE KENLY KIYA KATO
United States Magistrate Judge